United States District Court
Southern District of Texas
**ENTERED**
November 16, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| CURTIS SMITH, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:20-cv-00282 |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Curtis Smith ("Smith") seeks judicial review of an administrative decision denying his applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act (the "Act"), respectively. Before me are competing motions for summary judgment filed by Smith and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 20–21. After reviewing the briefing, the record, and the applicable law, I recommend that Smith's motion for summary judgment be **GRANTED**, and the Commissioner's motion for summary judgment be **DENIED**.

## BACKGROUND

Smith filed applications for disability insurance and supplemental security income benefits on July 7, 2017. In both applications Smith alleged disability beginning June 29, 2017. Smith's application was denied and denied again upon reconsideration. On December 19, 2018, an Administrative Law Judge ("ALJ") held a hearing. On April 24, 2019, the ALJ issued a decision, finding that Smith is not disabled. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

At Step 1, the ALJ found that Smith "has not engaged in substantial gainful activity since June 29, 2017, the alleged onset date." Dkt. 18-3 at 14.

At Step 2, the ALJ found that Smith suffered from "the following severe impairment: diabetes mellitus with neuropathy." *Id.*

At Step 3, the ALJ found that Smith "does not have an impairment . . . that meets or medically equals the severity of one of the listed impairments." *Id.* at 15.

Prior to consideration of Step 4, the ALJ determined Smith's RFC as follows:

> [Smith] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can frequently operate foot controls with his right lower extremity, and frequently handle objects with his right upper extremity. He can work with jobs that allow the use of a cane, but cannot work assembly line work or on mandated teams. The job should be self-paced so he can speed up, slow down, or even stop as long as the assigned work is complete by the end of the shift.

*Id.* at 15.

At Step 4, the ALJ found that Smith "is unable to perform any past relevant work." *Id.* at 19.

Nonetheless, the ALJ elicited testimony from a vocational expert ("VE") that "there are jobs that exist in significant numbers in the national economy that

3

[Smith] can perform." *Id.* at 20. Based on the Medical-Vocational Rules, the ALJ explained that Smith is not disabled. *See id.* at 20–21.

## DISCUSSION

Smith advances two arguments in this appeal: (1) the ALJ's RFC finding is not supported by substantial evidence because it is based solely on her lay interpretation of raw medical data and her own opinion; and (2) the ALJ's Step 5 finding is unsupported by substantial evidence because "[t]here is an obvious conflict between the jobs identified by the VE based upon the limitations set forth in the ALJ's hypothetical question, and the [Dictionary of Occupational Titles (DOT)] description of such jobs." Dkt. 20 at 1–2. I will address only the second argument because it warrants remand.

As a reminder, it is the Commissioner's burden at Step 5 to show that Smith can perform substantial gainful activity despite his impairment. *See Salmond*, 892 F.3d at 817. Moreover, as the ALJ noted, the determination of "whether a successful adjustment to other work can be made" must take into consideration "the claimant's residual functional capacity." Dkt. 18-3 at 20. The ALJ decided that any job Smith works "should be self-paced so he can speed up, slow down, or even stop as long as the assigned work is complete by the end of the shift." *Id.* at 15.

The ALJ based her decision that Smith "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" on two jobs: Order Clerk (DOT No. 209.567-014) and Telephone Quotation Clerk (DOT No. 237.367-046). *Id.* at 21. The Order Clerk description provides, in relevant part: "Takes food and beverage orders over telephone or intercom system and records order on ticket: Records order and time received on ticket **to ensure prompt service**, using time-stamping device." U.S. Dep't of Labor, Emp't & Training Admin., Dictionary of Occupational Titles Vol. I, 180 (4th ed. 1991) (emphasis added). The Telephone Quotation Clerk description provides, in relevant part: "Answers telephone calls from customers requesting **current** stock quotations and provides information posted on electronic quote

4

board." *Id.* at 207 (emphasis added). Smith argues that "[i]t is obvious from the DOT descriptions . . . that these jobs cannot be performed at a self-pace with times where an individual can 'slow down, or even stop' their work as both of these jobs are time sensitive." Dkt. 20 at 22. The Commissioner does not contest Smith's assertion that, per their DOT descriptions, these jobs cannot be performed at a self-pace. Rather, the Commissioner quotes the Fifth Circuit in arguing that "'DOT job descriptions should not be given a role that is exclusive of ***more specific [VE] testimony*** with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job.'" Dkt. 22 at 15 (quoting *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000)) (emphasis added). But in making this argument, the Commissioner overlooks two key points.

First, the VE did not give more specific testimony. In fact, the transcript shows no discussion regarding the pace of work. Second, the Fifth Circuit in *Carey* was dealing with a "tangential" conflict. 230 F.3d at 146. The *Carey* court distinguished the conflict before it from the "direct and obvious conflict at issue when the vocational expert's characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level provided for that job in the DOT," or "the less obvious conflict created when the vocational expert's testimony creates a conflict or discrepancy between the ALJ's determination of the claimant's residual functional capacity and the DOT job descriptions." *Id.* at 145–146. In other words, *Carey* is inapposite because the conflict here is far from tangential. Time-sensitive jobs that require "prompt service" and "current stock quotations" are facially incompatible with self-pacing.

As Smith notes in his reply, the Commissioner does not dispute (1) this obvious conflict; (2) "that the ALJ failed to obtain from the VE an explanation about the conflict between the VE's testimony and the DOT's job descriptions"; or (3) that the ALJ's decision lacks "a plausible reason for accepting testimony that conflicts with the DOT." Dkt. 23 at 8. The Commissioner cannot hang her hat on the notion "that a VE's testimony, based on a properly phrased hypothetical

question, constitutes substantial evidence." Dkt. 22 at 16. If that were the case, then so long as the ALJ asks a hypothetical that includes all of the claimant's limitations, a vocational expert could simply make up job descriptions and numbers. That would render meaningless the requirement that there exist jobs in significant numbers in the national economy that a claimant is capable of performing. *See* 20 CFR 404.1560(c)(1) ("Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).").

There may very well exist jobs in the national economy that Smith is capable of performing. But that record is not before me. In the record before me, there is an obvious and direct conflict between the ALJ's RFC and the requirements of the jobs on which she based her Step 5 finding. Nothing in the record explains this conflict. Thus, the ALJ's Step 5 finding represents a conspicuous absence of credible choices that renders her decision unsupported by substantial evidence.

## CONCLUSION

For the reasons stated above, I recommend that Smith's motion for summary judgment (Dkt. 20) be **GRANTED**, and the Commissioner's motion for summary judgment (Dkt. 21) be **DENIED**.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 16 day of November 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE